**NOT FOR PUBLICATION** (Docket No. 20)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

|  |  |  |
|---|---|---|
| KELVIN DAUGHTRY, | : | |
| Plaintiff, | : | Civil No. 09-5111 (RBK/AMD) |
| v. | : | **OPINION** |
| FAMILY DOLLAR STORES, INC., | : | |
| Defendant. | : | |

**KUGLER**, United States District Judge:

This matter arises out of alleged employment discrimination and retaliation at a Family Dollar store in New Jersey. Presently before the Court is the Motion for Summary Judgment filed by Defendant Family Dollar Stores, Inc. ("Family Dollar"). For the reasons discussed below, the motion is granted.

### I.   BACKGROUND

Kelvin Daughtry, and his wife, Darlene Daughtry are employees at Family Dollar discount stores. Mr. Daughtry was hired as a store manager at Family Dollar sometime in December 2004. During his tenure at Family Dollar, Mr. Daughtry worked as a store manager in several store locations, including Family Dollar's Chester and Upland stores in Pennsylvania, and the Gibbstown, Vineland, Bridgetown, and Pennsville stores in New Jersey. The events giving rise to this litigation occurred during Mr. Daughtry's employment at the Pennsville, New Jersey store.

On May 23, 2007, Mrs. Daughtry filed a charge of employment discrimination against

1

Family Dollar with the Equal Employment Opportunity Commission ("EEOC") ["Mrs. Daughtry's EEOC Charge"]. Mrs. Daughtry claimed that she was terminated in violation of Title VII of the Civil Rights Act of 1964 for "provid[ing] information on behalf of two [Family Dollar] employees to the Labor Board." (Simmons Cert. Ex. 6, Notice of D. Daughtry's Charge). Mrs. Daughtry's EEOC Charge does not state that Mr. Daughtry was involved in any of the events that gave rise to her discrimination claim, or that Mr. Daughtry assisted her with filing the claim or reporting the allegedly unlawful conduct to the Labor Board. The EEOC did not mail Mrs. Daughtry's EEOC Charge to Family Dollar until at least June 19, 2007, and Mr. Daughtry does not know when Family Dollar became aware of Mrs. Daughtry's EEOC Charge. (K. Daughtry Dep. 45:6-19).

Shortly after Mrs. Daughtry filed her EEOC Charge, Mr. Daughtry's troubles at Family Dollar began. On May 17, 2007, the Family Dollar Director of Operations, Gustavo Stifano, received a phone call from his assistant, Jeff Lunsford. Lunsford informed Stifano that an assistant manager at the Family Dollar store in Salem, New Jersey informed him that Mr. Daughtry and Mrs. Daughtry operated a store in Salem, New Jersey named "KanD", located less than one mile from the Pennsville store. Thereafter, Stifano began to investigate the KanD store. On May 17th, Stifano drove to KanD's, and observed clothing racks that appeared to be the same clothing racks that were used by Family Dollar, and ceiling tiles that appeared to Family Dollar property. (Stifano Cert. ¶ 9). Stifano claims that he recognized the clothing racks because they were unique to Family Dollar. (Id.).

Shortly thereafter, Stifano noticed other oddities. Mr. Stifano claims that he observed an employee from the Pennsville store parked in front of KanD's. Later that evening, Stifano also observed unidentified people transfer fifteen to twenty black bags from two cars to KanD's.

Stifano claims that at least one of the individuals appeared to be carrying a green Family Dollar tote.  Stifano attempted to follow the two cars after they departed, but lost them in traffic.

On May 18, 2007, Stifano emailed Michele Ann Ireson, the Family Dollar Human Resources Director, and Bill McCaslin, the Regional Vice President of Loss Prevention.  Stifano's email contained a brief description of his observations on May 17, 2007 at KanD's.  As a result of Stifano's email, McCaslin and the Loss Prevention department began an investigation of KanD's.  The parties dispute the results of McCaslin's investigation.  According to Family Dollar, Danyelle Hardy, one of McCaslin's subordinates visited KanD's on May 19, 2007 and discovered many of the same clothing items sold at Family Dollar.  Hardy also noticed that many of the fixtures inside KanD's resembled Family Dollar fixtures, and that a Family Dollar trash can was located on the premises of KanD's.[1]

Based upon Stifano's report and McCaslin's investigation, Ireson believed that Mr. Daughtry violated the Family Dollar Code of Business Conduct by operating KanD's.  The Family Dollar Code of Business Conduct provides in relevant part:

> Associates must avoid any actual or apparent conflict of interest.  A conflict of interest occurs in situations where your personal interest and the best interest of the Company are in actual or potential conflict. . . .
>
> You should avoid any situation in which your business decisions may actually or potentially be influenced by considerations of personal gain or benefit to you and/or some third party which conflicts with your obligation to serve the best interests of [Family Dollar] and its shareholders.  These situations may also rise if any member of your family or household has such an interest or position.  Some examples of conflicts of interest by an Associate

---

[1] Mr. Daughtry also claims that McCaslin stated that the fixtures used in KanD's are the same fixtures that are used by other retailers.  (Pl.'s Supp. Statement of Undisputed Material Facts ¶ 19).  However, the Court will not consider Mr. Daughtry's allegation, because a Court may not consider inadmissible hearsay evidence when deciding a motion for summary judgment.  See Shelton v. Univ. of Medicine & Dentistry of New Jersey, 223 F.3d 220, 226 n.7 (3d Cir. 2000) (noting that "hearsay statements can be considered on a motion for summary judgment only if they are capable of admission at trial.").

that may be in violation of the Code are set forth below.

- Having an interest in any business that competes with the Company or any business which has direct dealings with the Company. . . .

- Providing services to or representing a competing business or a business which has direct dealings with the Company.

(Simmons Cert. Ex. 7, at 3). The Code of Business Conduct also provides that "<u>No Associate shall enter into any situation, including those described above that may be considered a conflict of interest, without obtaining the prior written approval of the Compliance Committee</u>." (<u>Id.</u>). After concluding that Mr. Daughtry violated the Code of Business Conduct, Ireson recommended to Stifano that Family Dollar terminate Mr. Daughtry's employment with the company, and directed Stifano to meet with Mr. Daughtry to inform him of that decision. Stifano agreed with Ireson's assessment based upon his own observations and the results of McCaslin's investigation.

On June 6, 2007, Stifano and Ireson met with Mr. Daughtry and informed him that his employment was terminated. (Simmons Cert. Ex. 1, K. Daughtry Dep. 11:1-4; 63:1-14; Stifano Cert. ¶ 17). Stifano explained to Mr. Daughtry that he was terminated for violating Family Dollar's Code of Business Conduct by operating KanD's. (Compl. ¶ 25; Simmons Cert. Ex. 2).

Four months after his termination, on October 18, 2007, Mr. Daughtry filed a Charge of Discrimination with the EEOC ("Mr. Daughtry's EEOC Charge"). Mr. Daughtry's EEOC Charge alleges "I believe that I was retaliated against in violation of Title VII of the Civil Rights Act of 1964, as amended, in that my wife, Darlene Daughtry, filed a charge of employment discrimination on May 23, 2007 against the same employer." (Simons Cert. Ex. 2, K. Daughtry EEOC Charge). Mr. Daughtry's EEOC Charge does not allege that Family Dollar retaliated against him because any employee believed or perceived that he engaged in any protected

4

activity. Moreover, Mr. Daughtry admits that he never told anyone at Family Dollar that he testified, assisted, or participated in any protected investigation while he was employed by Family Dollar. (Simmons Cert. Ex. 1, K. Daughtry Dep. 49:18-23). Finally, Mr. Daughtry testified that he never participated in or assisted in any investigation regarding his wife while he was employed at Family Dollar. (Simmons Cert. Ex. 1, K. Daughtry Dep. 49:12-17).

On October 6, 2009, Plaintiff filed the Complaint in this Court. The Complaint alleges: (1) violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e et seq., for racial, sexual, and religious discrimination (Count I); (2) violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981, for racial discrimination (Count II); (3) violation of the New Jersey Law Against Discrimination, N.J. Stat. Ann. 10:5-1 et seq., for racial, sexual, and religious discrimination (Count III); and (4) violation of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981 for "perceived assistance to opposition to illegal practices" (Count IV). On August 27, 2010, Defendant moved for summary judgment. The parties submitted their respective briefs and the motion is now ripe for review.

## II.     STANDARD

Summary judgment is appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986). A genuine issue of material fact exists only if the evidence is such that a reasonable jury could find for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). When the Court weighs the evidence presented by the parties, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Id. at 255.

The burden of establishing the nonexistence of a "genuine issue" is on the party moving for summary judgment. Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1080 (3d Cir. 1996). The moving party may satisfy its burden either by "produc[ing] evidence showing the absence of a genuine issue of material fact" or by " 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325.

Once the moving party satisfies this initial burden, the nonmoving party must "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e). To do so, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushida Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Rather, to survive summary judgment, the nonmoving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Furthermore, "[w]hen opposing summary judgment, the nonmovant may not rest upon mere allegations, but rather must 'identify those facts of record which would contradict the facts identified by the movant.'" Corliss v. Varner, 247 F. App'x 353, 354 (3d Cir. 2007) (quoting Port Auth. of N.Y. & N.J. v. Affiliated FM Ins. Co., 311 F.3d 226, 233 (3d Cir. 2002)).

In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. Credibility determinations are the province of the factfinder, not the district court. BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

## II.  DISCUSSION

### A. Title VII Retaliation Claims (Count IV)[2]

Plaintiff brings a Title VII retaliation claim based on two theories of retaliation.  First, Plaintiff argues that Family Dollar terminated his employment because his wife filed a complaint with the EEOC.  (Compl. ¶ 70).  Second, Plaintiff contends that Family Dollar believed that he "testified, assisted, or participated" in his wife's investigation, and retaliated against him by terminating his employment.  (Compl. ¶ 70).  Defendants argue that Plaintiff's retaliation claim based upon the theory that he was fired because of his wife's investigation fails as a matter of law.  Specifically, Defendants argue that in Fogleman v. Mercy Hosp., Inc., 283 F.3d 561 (3d Cir. 2002), the Third Circuit made clear that a plaintiff may not bring a third-party retaliation claim under Title VII.  With respect to Plaintiff's second argument, Defendants argue that there is no evidence in the record that any Family Dollar employee believed that Plaintiff assisted his wife with her investigation.  The Court finds that because the record lacks any evidence that Defendants believed that Plaintiff assisted his wife with her investigation, summary judgment is appropriate on Plaintiff's Title VII retaliation claims.

### 1. Third-Party Retaliation

To establish a prima facie case of retaliation under Title VII, a plaintiff must offer evidence that: "(1) [he] engaged in activity protected by Title VII; (2) the employer took an adverse employment action against [him]; and (3) there was a causal connection between . . . the protected activity and the adverse employment action." Moore v. City of Philadelphia, 461 F.3d 331, 340-41 (3d Cir. 2006) (internal quotations omitted).  With respect to the first element of a

---

[2] In the Third Circuit, courts generally apply "the tests used to evaluate employment discrimination claims brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., to employment discrimination claims brought under § 1981, since 'the substantive elements of a claim under section 1981 are generally identical to the elements of an employment discrimination claim under Title VII.'" Anderson v. Wachovia Mortg. Corp., 621 F.3d 261, 267 (3d Cir. 2010) (quoting Brown v. J. Kaz, Inc., 581 F.3d 175, 181-82 (3d Cir. 2009)).

7

prima facie case, the individual who was discriminated against need not be the individual who engaged in the protected activity. Thompson v. N. Am. Stainless, LP, No. 09-291 (U.S. Jan. 24, 2011). Thus, as the Supreme Court recently held in Thompson v. North American Stainless, LP, a plaintiff may bring a third-party retaliation claim based on the protected activity of close family member. Thompson, No. 09-291, slip op. at 3-4.

In Thompson, the petitioner and his fiancé were employees at a stainless steel company. In 2003, the petitioner's fiancé filed an EEOC charge alleging sex discrimination. Thompson, slip op. at 1. Three weeks later, the steel company terminated the petitioner's employment. Id. The petitioner then filed an EEOC charge alleging that the company fired him in order to retaliate against his fiancé. Id. The district court granted the company summary judgment, finding that Title VII "does not permit third party retaliation claims." Thompson v. N. Am. Stainless, LP, 435 F. Supp. 2d 633, 639 (E.D. Ky. 2006). The Sixth Circuit affirmed. Thompson v. N. Am. Stainless, LP, 567 F.3d 804 (2009). The Supreme Court reversed, holding that a plaintiff may bring a third-party retaliation claim under Title VII. Thompson, slip op. at 3-4. The Court relied on Burlington N. & S.F.R. Co. v. White, 548 U.S. 53 (2006), where it held that "'the antiretaliation provision [in Title VII], unlike the substantive provision, is not limited to discriminatory actions that affect the terms and conditions of employment' . . . Rather, Title VII's antiretaliation provision prohibits any employer action that 'might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" Thompson, slip op. at 2 (quoting Burlington, 548 U.S. at 64, 68) (internal citations omitted). Applying Burlington, the Court found that Title VII's antiretaliation provision is capacious enough to encompass an employer's attempt to retaliate against an employee by taking adverse action against that employee's close family member. Id. at 3.

8

Similar to the petitioner in Thompson, who brought a Title VII retaliation claim based upon an EEOC charge brought by his fiancé, here, Plaintiff alleges that Defendant terminated him because his wife filed an EEOC charge. In Thompson, the EEOC charge filed by the petitioner's fiancé was the "activity" entitled to protection under Title VII. Likewise, here, the protected activity is Mrs. Daughtry's EEOC Charge. Therefore, just as the Thompson Court held that the petitioner could bring a Title VII third-party retaliation claim based upon his fiancé's protected activity, here, the Court finds that Mr. Daughtry may bring a third-party retaliation claim based upon Mrs. Daughtry's EEOC Charge.[3]

However, although a plaintiff may bring a third-party retaliation claim under Title VII as a matter of law, Plaintiff's third-party retaliation claim fails because no reasonable jury could find that the individuals who made the decision to terminate Plaintiff's employment were aware of Mrs. Daughtry's EEOC Charge. Both Stifano and Ireson stated that at the time they decided to terminate Plaintiff's employment, they were unaware that either Plaintiff or Mrs. Daughtry filed an EEOC charge for employment discrimination. (Stifano Cert. ¶ 5; Ireson Cert. ¶ 5). Moreover, the evidence shows that Stifano and Ireson terminated Plaintiff's employment because

---

[3] The Court notes that prior to January 24, 2011, the rule in the Third Circuit was that that a plaintiff cannot bring a third-party retaliation claim under Title VII. See Fogleman, 283 F.3d at 568 (finding that "the individual who was discriminated against must also be the individual engaged in the protected activity."). In Fogleman, the plaintiff-employee was a security officer at a hospital. Id. at 565. The plaintiff's father worked at the same hospital as an engineer. Id. After the hospital gave the plaintiff's father the choice of accepting a demotion or forfeiting his employment, he sued the hospital for unlawful discrimination. Id. A year after his father commenced the lawsuit; the plaintiff was involved in an incident in the hospital's gift shop. Id. at 566. After the plaintiff's incident, the hospital suspended him with pay, and then terminated his employment. Id. The plaintiff brought a lawsuit against the hospital alleging violations of the ADA, ADEA, and the Pennsylvania Human Relations Act (PHRA), 43 P.S. §§ 951-963. Id. The plaintiff alleged that he was terminated in retaliation for his father's lawsuit. Id. The court rejected the plaintiff's argument that the hospital retaliated against him because of his father's lawsuit, and found that third-party retaliation claims are not cognizable for ADA or ADEA claims as a matter of law. Id. at 570. The Court also noted that "[b]ecause the anti-retaliation provisions of the ADA and ADEA are nearly identical, as is the anti-retaliation provision of Title VII, . . . precedent interpreting anyone of [those] statutes is equally relevant to interpretation of others." Id. at 567.

In their briefs, the parties relied upon Fogleman. However, on January 24, 2011, in Thompson v. N. Am. Stainless, LP, No. 09-291 (U.S. Jan. 24, 2011), the Supreme Court held that a plaintiff may bring a third-party retaliation claim under Title VII.

they believed that he violated the Family Dollar Code of Business Conduct by operating KanD's. (Stifano Cert. ¶ 15-16) ("I made the decision to terminate Mr. Daughtry's employment based upon my review of the facts and consideration of the recommendation of Michele Ann Ireson after thorough review of Loss Prevention's finding that Mr. Daughtry . . . [was] involved in the operation of a retail store, "KanD's . . . ."); (Ireson Cert. ¶ 11) ("It was clear as a result of my follow up review of the Code of Business Conduct, that Mr. Daughtry's operation of KandD's [sic] with his wife was a conflict of interest prohibited by the Code and punishable by termination."). To refute that evidence, Plaintiff points to no direct evidence that either Ireson or Stifano knew of Mrs. Daughtry's lawsuit at the time they decided to terminate Plaintiff's employment. Instead, Plaintiff invites the Court to infer that Stifano and Ireson were aware of Mrs. Daughtry's EEOC Charge because of: (1) the timeline leading up to Plaintiff's discharge; and (2) the fact that Mrs. Daughtry sent an email to Family Dollar employees, including the President of Family Dollar, complaining of unlawful discrimination. However, as the Supreme Court held in Matsushida, "[on a motion for summary judgment] the nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." 475 U.S. at 586. Here, the record is devoid of any evidence (1) that the letter Mrs. Daughtry sent to Family Dollar employees actually reached Ireson and Stifano, or (2) that because the timeline supports the theoretical possibility that Stifano and Ireson were aware of Mrs. Daughtry's EEOC Charge and investigation, Stifano and Ireson were actually aware of Mrs. Daughtry's EEOC Charge. As previously mentioned, on a motion for summary judgment, once the moving party satisfies its burden, the nonmoving party "must identify those facts of record which would contradict the facts identified by the movant." Corliss v. Varner, 247 F. App'x 353, 354 (3d Cir. 2007) (internal quotations omitted). Here, Plaintiff fails to offer sufficient evidence to satisfy

that burden. Accordingly, to the extent that Count IV alleges that Defendant retaliated against Plaintiff because he opposed discriminatory action taken against Mrs. Daughtry, or assisted her with the EEOC Charge and investigation, the Court will grant Defendant summary judgment.

### 2. "Perception Theory" of Retaliation

Plaintiff also asserts a so-called "perception theory" of retaliation. Although it is unclear from the Complaint and the moving papers, Plaintiff seems to argue that Family Dollar retaliated against him because it believed that he assisted his wife with her EEOC charge or opposed unlawful discrimination directed towards her. Defendants argue that Plaintiff's perceived discrimination claim fails because Plaintiff presents no evidence that the Family Dollar employees who decided to terminate his employment knew that Mrs. Daughtry filed an EEOC charge. The Court finds that for the same reasons that Defendant is entitled to summary judgment on Plaintiff's third-party retaliation claim under Title VII, the Court finds that Defendant is entitled to summary judgment on Plaintiff's claim of perceived discrimination. Because the evidence fails to demonstrate that either Stifano or Ireson was aware of Mrs. Daughtry's EEOC Charge, the Court finds that neither Stifano nor Ireson could "perceive" that Mr. Daughtry assisted Mrs. Daughtry with her EEOC charge or opposed any unlawful discrimination directed towards her because of an EEOC charge. Accordingly the Court grants Defendant summary judgment on Plaintiff's claim of perceived retaliation in violation of Title VII.

### B. Title VII Non-Retaliation Claims (Count I)

Plaintiff also brings Title VII non-retaliation claims based on race and sex-based discrimination. Specifically, the Complaint alleges that Defendants discriminated against Plaintiff by "physically intimidating [him]," using crude racial and sexist slurs in a manner that

11

created a cruel and hostile work environment, and "belittling plaintiffs' complaints about racist and sexist jokes and slurs," in violation of Title VII and Family Dollar's internal policies and procedures.

Before filing a Title VII claim in federal court, a plaintiff must exhaust all administrative remedies. Robinson v. Dalton, 107 F.3d 1018, 1020 (3d Cir. 1997) ("It is a basic tenet of administrative law that a plaintiff must exhaust all required administrative remedies before bringing a claim for judicial relief.") (citing McKart v. United States, 395 U.S. 185, 193 (1969)). Thus, prior to bringing a Title VII claim for judicial relief, "a plaintiff must file a charge with the EEOC sufficient to put the EEOC on notice of her particular claims." Red v. Potter, 211 Fed. App'x 82, 85 (3d Cir. 2006) (citing Angelino v. N.Y. Times Co., 200 F.3d 73, 93 (3d Cir. 1999)). If the plaintiff satisfies the exhaustion requirement, "the parameters of the civil action in the district court are defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." Ostapowicz v. Johnson Bronze Co., 541 F.2d 394, 398-99 (3d Cir. 1976); see Williams v. East Orange Cmty. Charter Sch., No. 10-1985, 2010 WL 3933477, at *1 (3d Cir. Oct. 8, 2010) ("The ensuing suit [in federal court] is limited to claims that are within the scope of the initial administrative charge.") (emphasis added). Moreover, where an EEOC charge fails to include a Title VII claim based upon a specific protected characteristic, the plaintiff is precluded from bringing a claim for judicial relief for that characteristic in federal court. See Spindler v. Se. PA Transp. Auth., 47 Fed. App'x. 92, 94-95 (3d Cir. 2002) (finding that district court appropriately dismissed claim of discrimination on the basis of race when plaintiff alleged discrimination on the basis of disability in his EEOC charge, and then subsequently brought a claim for discrimination on the basis of race in federal court); Antol v. Perry, 82 F.3d 1291, 1295-96 (3d Cir. 1996) (dismissing plaintiff's gender

discrimination claim because EEOC charge only included claims of disability discrimination); Fessler v. PPL Utilities Corp., No. 08-1756, 2008 WL 3832224, at *7-8 (E.D. Pa. Aug. 14, 2008) (dismissing age discrimination claim of plaintiff who filed EEOC complaint for retaliation).

Here, because Plaintiff failed to put the EEOC on notice of his claims of race and sex-based discrimination in the EEOC Charge, Plaintiff's Title VII discrimination claims are dismissed. Plaintiff's EEOC Charge states "I believe that I was retaliated against in violation of Title VII of the Civil Rights Act of 1964, as amended in that my wife, Darlene Daughtry filed a charge of employment discrimination on May 23, 2007 against the same employer." (Simmons Cert. Ex. 2, K. Daughtry EEOC Charge) (emphasis added). The EEOC Charge contains no allegation that Plaintiff himself experienced any unlawful discrimination on the basis of his race or sex. It is clear from the EEOC charge that Plaintiff's claim lies in unlawful retaliation; not unlawful discrimination on the basis of race or sex. Therefore, because Plaintiff's claims of race and sex discrimination are separate and distinct from Plaintiff's allegations of retaliation in the EEOC Charge, the Court will grant Defendant summary judgment on Count I.

### C. 42 U.S.C. § 1981 (Count II)[4]

"Section 1981 provides a private cause of action for intentional discrimination only." Peteete v. Asbury Park Police Dep't., No. 09-1220, 2010 WL 5150171, at *6 (D.N.J. Dec. 13, 2010) (citing Gen. Bldg. Contractors Assoc. v. Pennsylvania, 458 U.S. 375, 391 (1982)). In order for a plaintiff to bring a claim under Section 1981, he must demonstrate that: "(1) [he] belongs to a racial minority; (2) the defendants intended to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in [Section 1981]." Whitfield v. Notre Dame Middle Sch., No. 09-2649, 2011 WL 94735, at *4 (3d Cir. Jan. 12,

---

[4] Unlike Title VII claims, 42 U.S.C. § 1981 claims do not require exhaustion of administrative remedies. See Young v. Int'l Telephone & Telegraph Co., 438 F.2d 757, 761-63 (3d Cir. 1971).

13

2011) (citing Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 569 (3d Cir. 2002)).

In the Opposition Brief, Plaintiff strains to argue that "evidence obtained through discovery shows a pattern and practice of the defendant that promotion of employees beyond store manager was constrained on racial grounds." (Opp'n Br., at 2). To support that argument, Plaintiff offers evidence that Family Dollar had "zero black and Hispanic district managers in plaintiff's region," and argues that his prospects of advancement were barred by a "glass ceiling." (Opp'n Br. Ex. A; Opp'n Br., at 2). Defendant argues that Plaintiff's race discrimination claim is without merit because Plaintiff failed to offer evidence that Family Dollar intentionally discriminated against him on the basis of race. The Court agrees.

Examining the record as a whole, and drawing all reasonable inferences in favor of Plaintiff, the Court finds that no reasonable jury could find that Defendant intentionally discriminated against Plaintiff on the basis of race. First, the sole evidence of racial discrimination Plaintiff points to—the mere fact that none of the store managers in his region are either black or Hispanic—fails to demonstrate intentional discrimination as a matter of law. Where an employer has a facially neutral hiring policy, raw evidence of the number of minority employees compared to the number of nonminority employees alone fails to prove unlawful discrimination. See Elmore v. Clarion Univ., 933 F. Supp. 1237, 1250-51 (M.D. Pa. 1996) (finding that raw number of African American faculty members and white faculty members, without more, fails to demonstrate discriminatory impact). Thus, without more, the mere allegation that Defendant failed to hire any black district managers, fails to demonstrate discriminatory intent. Second, Plaintiff's own deposition testimony belies his claim that he suffered from any unlawful racial discrimination. When asked during a deposition: "do you have any evidence that . . . Family Dollar discriminated against you on the basis of your race,"

14

Plaintiff replied "No." (Simmons Cert. Ex. 1, K. Daughtry Dep. Tr. 9:7-18; 67:24-68:2). Thus, Plaintiff's own admission eradicates his claim that Defendants unlawfully discriminated him on the basis of race.

In sum, because Plaintiff fails to offer evidence that Defendant discriminated against him on the basis of race, Plaintiff fails to make out a prima facie case of Section 1981 discrimination. Accordingly, the Court will grant Defendant summary judgment on Count II.

### D. NJLAD (Count III)

Plaintiff alleges that Defendant violated the NJLAD by discriminating on the basis race, sex, and religion. Defendant argues that Plaintiff's NJLAD claim is without merit because Plaintiff admits in deposition testimony that Defendant did not discriminate or harass him on the basis of race. (Def.'s Mot. Br., at 5; Simmons Cert. Ex. 1, K. Daughtry Dep. Tr. 9:7-18). Plaintiff failed to dispute that contention in the opposition brief.

The Court finds that because Plaintiff failed to respond to Defendant's contention that Plaintiff suffered from no racial discrimination during his employment at Family Dollar, Plaintiff's NJLAD claim fails. The general rule is that "[w]here a plaintiff has brought a cause of action which is challenged through motion for summary judgment as legally insufficient, it is incumbent upon the plaintiff to affirmatively respond to the merits of a summary judgment motion." Skirpan v. Pinnacle Health Hosps., No. 07-1703, 2010 WL 3632536, at *6 (M.D. Pa. Apr. 21, 2010); see Player v. Motiva Enters. LLC, 240 Fed App'x 513, 522 n.4 (3d Cir. 2007) (stating that when a party moving for summary judgment satisfies its initial burden of proving that there is an absence of evidence to support the nonmoving party's case, and the nonmoving party fails to respond, "the nonmoving party cannot later argue, on appeal, that there is evidence in the record that creates a genuine issue of material fact, if that evidence was not pointed out to

15

the district court at the time of the motion for summary judgment.") (internal quotations omitted). Thus, "a Plaintiff's failure to respond to [the defendant's arguments on summary judgment] constitutes an abandonment of these causes of action and essentially acts as a waiver of these issues." Skirpan, 2010 WL 3632536, at *6; Seals v. City of Lancaster, 553 F. Supp. 2d 427, 433 (E.D. Pa. Mar. 21, 2008) (finding that because plaintiff failed to address portion of defendant's motion for summary judgment in her response, "plaintiff's failure . . . constitutes abandonment of those claims.").

Here, Defendant offered testimony that Plaintiff did not suffer from any direct discrimination during his employment at Family Dollar. Plaintiff failed to dispute that contention or otherwise offer any evidence in support of his NJLAD claim. Because Plaintiff failed to respond to Defendant's evidence, Plaintiff waived his NJLAD claim. Accordingly, the Court grants Defendant summary judgment on Count III.[5]

### III. CONCLUSION

For the reasons discussed above, Defendants motion for summary judgment is granted. An appropriate order shall issue today.

Date: 2/16/2011            /s/ Robert B. Kugler
                                   ROBERT B. KUGLER
                                   United States District Judge

---

[5] Plaintiff's Section 1981 and NJLAD claims arise from a similar set of facts. However, as the aforementioned analysis makes clear, Plaintiff's failure to respond to Defendant's challenge to the NJLAD claim entitles Defendant to summary judgment on the NJLAD claim. Moreover, even if the Court construes Plaintiff's opposition to Defendant's motion for summary judgment on the Section 1981 claim as an opposition to Plaintiff's motion for summary judgment on the NJLAD claim, the result is undisturbed. If Plaintiff argues that the method of proving an NJLAD claim is identical to the method of proving a Section 1981 claim, then both claims fail. On the other hand, if Plaintiff seeks to argue that the method of proving an NJLAD claim is different than the method of proving a Section 1981 claim, Defendant is entitled to summary judgment because Plaintiff failed to meet its burden of proving the substantive elements of an NJLAD claim.